G. H. MEYER, Respondent, v. J. W. BURCH, H. W. Voight, Lee Mallard, Arthur Knutson, O. G. Davenport, A. A. Stewart, C. McCauley, James Teachout, Frank Teachout, Bert Buckley, W. A. Clark, John Yegen, Oscar Anderson, Carl Anderson, and August Anderson, Members of an Association and Partnership Doing Business as Stewartsdale Rural Telephone Company, Appellants.

(170 N. W. 126.)

Association — rural telephone line — constructing and operating — purpose of — members of — negligence of — liability of association for — jury — verdict of — supported by evidence.

The evidence is examined and *held* to support the verdict of the jury, holding the defendants liable for the negligence of a member of an association organized for the purpose of constructing and operating a rural telephone line.

Opinion filed November 16, 1918.

Appeal from the District Court of Burleigh County, *W. L. Nuessle, J.*

Affirmed.

*E. T. Burke,* for Oscar Anderson and Carl Anderson, appellants.

*F. E. McCurdy,* for J. W. Burch et al., appellants.

The plaintiff's theory of this case is that this association is a partnership and that it is liable for the negligent acts of its members. The liability is based upon the doctrine or rule of agency. But the mere fact, "that a servant uses dangerous agency, intrusted to him by his master, in doing an injury to another, does not make the act one of his master's for which he is responsible." In such case it must further appear that the act of negligence of the agent, was done in the course of his employment and for the purpose of forwarding the business of the master. Galveston, H. & S. A. R. Co. v. Currie, 96 S. W. 1073, 10 L.R.A.(N.S.) 367; Wilson v. Peverly, 2 N. H. 548; Satterlee v. Groat, 1 Wend. 272; 27 L.R.A. 166.

The master is not liable where the servant fails to obey his orders and injury follows his acts. 27 L.R.A. 787, note.

*Newton, Dullam, & Young,* for respondent.

A partnership or an association is liable for the torts of its members when committed within the scope of the business for which the association is formed, since each member of an association is the agent of the association in the transaction of its business. 4 Cyc. 312; Cooley, Torts, 3d ed. p. 253; Ingliss v. Millersburg Driving Asso. (Mich.) 136 N. W. 443.

Such a party cannot avoid liability by letting its work to a contractor who performs it so negligently as to result in injury to another. Galveston, H. & S. R. Co. v. Currie, 10 L.R.A. (N.S.) 375.

"A servant, while acting with the instruments which his master places in his hands to be used in his behalf, is acting for and instead of the master, and the master is bound by his acts." Nashville & C. R. Co. v. Starnes, 24 Am. Rep. 297.

The question of the partnership of the defendants was properly one for the jury and was appropriately submitted. Murray v. Walker (Iowa) 48 N. W. 1075; Smith v. Hollister, 32 Vt. 695.

BIRDZELL, J. This is an appeal by a portion of the defendants from a judgment entered in the district court of Burleigh county, in favor of the plaintiff. The action is one to recover damages occasioned to the plaintiff, a brakeman on the Soo Railroad, on the 2d day of January, 1917, by coming in contact with a telephone wire which had been strung across the right of way of the railroad company and causing him to be violently knocked down upon the top of the car upon which he was riding. The jury returned a verdict in favor of the plaintiff against all of the defendants, assessing the plaintiff's damages at $300. It appears that the wire which occasioned the plaintiff's injury was strung by the defendants Anderson, who did not appeal from the judgment. In 1916 an association was formed in the community in which the defendants reside for the purpose of establishing a rural telephone line to serve the members of the association. The members styled their association the Stewartsdale Rural Telephone Company. It seems that the capital stock of the company consisted of the telephone equipment and the property of the company;

and that the members had a mutual understanding or agreement that they were to share the labor incident to the construction of the line and pro rate the general expenses. There was a written agreement or constitution which provided for a board of directors and for officers of the association. The board of directors was given general executive authority to carry out the objects of the association.

The sole contention of the appellants is that the negligence which caused the plaintiff's injury was the negligence of the Andersons, who do not appeal, for which they alone are liable. It is admitted that the Andersons were members of the association, at least originally, and there is no question but what the defective construction which was the direct cause of the injury was the work of the Andersons in conjunction with one Moran, a hired lineman. It is contended that the work was done by them in violation of the by-laws and the instructions given by the executive officers, and was wholly outside the authority of the Andersons as members of the association. The instructions of the trial court amply cover this phase of the case and the question as to the liability of the defendants resolves itself at once into one of the sufficiency of the evidence to support the verdict against the members of the association other than those who did the work. It is true, as pointed out by the appellants' counsel, that the testimony of Mr. Burch, which covers quite completely the association's connection with the work in question, and the relations existing between the association and the Andersons, goes a long way toward disproving the authority of the Andersons to act for the association. This testimony goes to establish in substance that there was a misunderstanding with reference to the location of that portion of the line which was to be constructed with a view to giving telephone service to the Andersons; that in adjusting this difficulty it became necessary to move some of the poles; that there was delay in stringing the wire and installing the telephones after the wire had been hauled, due to the failure of one Carl Anderson to put up a note as payment of his share; that it was understood between Mr. Burch and Mr. Anderson that Anderson could not "get his phone until he had left a note with Mr. Leonard Bell at the First National Bank in Bismarck;" and that Anderson contended that he would not put up his note until he got the phone. Mr. Burch further testifies that Anderson finally agreed to take the note (which

had been previously executed) to the bank and that he (Burch) had made arrangements with Mr. Shuman, a man qualified to superintend telephone construction work, to send a man to do the work when he would tell him to. The substance of Mr. Burch's testimony is that the company had not authorized the construction work of the Andersons; but, on the contrary, that they had forbidden it for two reasons: First, because they had not put the poles where the line was to be located; and, second, because they had not settled for their proportionate share of the expense. The testimony of Oscar Anderson, however, is that before stringing the wire he had attended a meeting of the association, and that at that meeting he told his associates that there was a piece of ground along the railroad upon which he could not get the right of way for the telephone line and that it would have to be changed; and at that meeting Mr. Burch said, "Run it up along the line and bring it down," and that Anderson asked Burch at that time if he was entitled to his telephone as soon as he got that changed and he said "Yes." He testified further:

"Q. Now, isn't it a fact, Mr. Anderson, that the company wouldn't consent to any of this change of route until after Carl Anderson came in and agreed to pay the extra money? Isn't that a fact? A. He came in when we agreed to change it. *'Sure!' Mr. Burch says, 'whenever you change that line you are entitled to your telephone.'*" Carl Anderson testified that the poles at the Soo crossing, upon which the line that occasioned the plaintiff's injury was later strung, had been standing since the latter part of October, which would be more than two months previous to the injury. That the other members of the telephone company used the road during this time; that the defendant Voight, secretary of the company, was present when he got the wire to string upon the poles; that he had had the telephone instrument which he intended using since early in the fall; that he had given a note to the bank for the money which he was owing to the company and left the note in the bank. (The date of leaving it there does not seem to be established in the testimony.) He testified further that the members of the company never told him that they were holding up the telephone until the note was paid. As to his fulfillment of the conditions upon which the company was willing to install the telephone, he testified:

Q. Now, isn't it a fact, Mr. Anderson, that the telephone company would not string the wire and would not install your telephone until you made some satisfactory arrangements about the pay?   .   .   .

A. I made satisfactory arrangements with the bank.   There is where they told me to do it.

Q. Now, isn't it a fact, Mr. Anderson, that the telephone company would not string the wire and would not install your telephone until you made some satisfactory arrangements about the pay?

A. Yes, they did.   .   .   .

Q. Tell the jury why the telephones were delayed from June until January?

A. I don't know unless it was because they thought that the poles were not in their right places, is the only reason I could see.

As to the authority of the Andersons to proceed with the line work, the record shows clearly that the line work was to be done under the superintendence of one F. L. Shuman; and that Burch, president of the company, had, at one time, left an order with Shuman, covering the construction work in question, but that he had later cancelled it. It is only fair to assume that the Andersons, as members of the association, knew of the general arrangement with Shuman to superintend the work.  Shuman testified that one of the Andersons came to him and asked him to supply a man for that purpose and that he refused "in an indirect way to supply the man."   The testimony of Oscar Anderson throws some light upon Shuman's answer, wherein he stated that he refused to supply a man "in an indirect way."   Oscar Anderson says that Burch had told him to "get a man and do it;" that he had told him to "go to Shuman and get a man."   " 'Shuman,' he says, 'will furnish you a man' and I went there to get him."   However, he got no man from Shuman, the latter saying, "Why don't you do it yourself, it doesn't take much of a man to install a phone and string a wire."   It appears that following the conversation with Shuman, the Andersons procured one Moran, who had had experience as a telephone lineman, to assist them in stringing the wire.

It seems to us to be clear upon the whole record that there was a conflict in the testimony with reference to the authority of the Andersons to proceed in the way they did to do the work in question.   It

will be noted that in the testimony of the Andersons it appears that whatever they did by way of prosecuting the work was done in the open and generally after consultation with the officers of the company; that they adopted suggestions which were made from time to time by Burch, and that they were guided in the execution of the work by the suggestions of the chosen superintendent, Shuman. In the light of this testimony, we think it clear that the jury was warranted in finding that the Andersons, in negligently stringing the wire, were engaged in carrying on the work of the association, and that they acted as agents of the association in so doing.

In our opinion, this case does not turn upon any technical question of the existence or nonexistence of a legal partnership, nor upon the violation of by-laws made to govern the activity of the various members of the association. The record, as we view it, contains ample testimony to support the verdict of the jury. The judgment entered thereon is right and it is affirmed.

BRUCE, Ch. J. I dissent.

ROBINSON, J. (concurring). This is an action against fourteen defendants. The complaint charges that as a copartnership or voluntary association for the construction and operation of a local telephone, the defendants negligently strung a telephone wire across the track of the Soo Railway Company. That as a brakeman in the employ of said company, the plaintiff, while on the top of a moving freight train, was knocked down, severely bruised, and injured by contact with such wire. The jury found a verdict against all of the defendants for the moderate sum of $300. Twelve of the defendants appeal from the verdict and judgment and from an order denying a motion for judgment notwithstanding the verdict. There is no claim that the verdict is excessive.

No appeal is taken by the two Andersons, who laid the wire across the railroad track, and the appellants claim that in laying the wire the Andersons acted without any authority and as mere trespassers.

Defendants are farmers living a short distance southeast of Bismarck. During the year 1916 they decided to construct and operate a farmers' telephone line. A written agreement was signed by all the

parties.   Each member agreed to do part of the work and to pay part of the expense and to share in the profits and advantages of the telephone line.   Each agreed to share in the profits and losses.   Without incorporating they signed an agreement in the form of articles of incorporation, declaring that their company should be known as the Stewartsdale Rural Telephone Company, and have a president, vice president, treasurer, secretary, and a board of five directors to be regularly elected by a .majority of the stockholders.   The written agreement signed by the defendants clearly shows they contemplated and agreed as partners to do a telephone business and to do it in the name and in the manner of a corporation.

A partnership is the association of two or more persons for the purpose of carrying on business together and dividing the profits.   Comp. Laws, § 6386.

An agreement to divide the profits of a transaction implies an agreement for a corresponding division of losses.   Comp. Laws, § 6392.

Every general partner is the agent for the partnership in the transaction of its business and has authority to do whatever is necessary to carry on such business in the ordinary manner.   Comp. Laws, § 6402.

As the construction of a telephone line was one of the primary objects of the partnership, it follows that in such construction each partner was a general agent of all the others and all are liable to third parties for a loss resulting from the negligent and improper construction of its line.   Such liability was not in any manner changed or obviated by any agreement between the parties.   Hence, there is no reason for considering any evidence of arrangements between the partners in regard to the construction of the line or the special authority of any partner.   It in no manner affects the rights of the plaintiff to recover for the injury sustained.   So far as his rights are concerned, each member of the company was an officer and a general agent of the partnership.

Every general partner is liable to third persons for all the obligations of the partnership jointly with his copartners.   Comp. Laws, § 6410.

Judgment affirmed.